[Cite as *In re T.B.*, 2020-Ohio-4040.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: T.B.
    A.B.

C.A. Nos.    29560
                29564

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 17-09-742
              DN 17-09-743

DECISION AND JOURNAL ENTRY

Dated: August 12, 2020

CARR, Judge.

{¶1} Appellants Mother and Father appeal the judgment of the Summit County Court of Common Pleas that terminated their parental rights and placed the children T.B. and A.B. in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of T.B. (d.o.b. 7/26/13) and A.B. (d.o.b. 4/16/17). Shortly after A.B. was born, Mother, Father, and the children moved in with the children's maternal grandparents against the wishes of the grandparents. Mother and Father did not have jobs and refused to contribute financially to the household, where Mother's two older children also lived in the legal custody of the grandparents. CSB investigated the home situation based on a referral. Thereafter, the agency filed a complaint alleging that T.B. and A.B. were

abused (endangered), neglected, and dependent children. Concerns alleged in the complaints included intimate partner violence between Mother and Father, domestic violence by Father towards the children, suspected drug use by both parents, and Mother's and Father's lack of financial and housing stability. The grandparents were leasing the home on a month-to-month basis and they planned to leave that residence. T.B. and A.B. were removed pursuant to an emergency order of temporary custody.

{¶3} Mother and Father later both waived their rights to hearings on the issues of adjudication and disposition. After the parents stipulated to the allegations in the complaints, the juvenile court adjudicated T.B. and A.B. dependent children. CSB withdrew its allegations of abuse and neglect. The parties agreed to an initial disposition placing the children in the temporary custody of the agency. Mother and Father were permitted two hours of supervised visitation each week.

{¶4} The juvenile court adopted CSB's case plan as the order of the court. Mother's first objective was to obtain a mental health assessment and follow all recommendations. In addition, Mother and Father both had objectives to (1) obtain substance abuse assessments, engage in counseling if recommended, and submit to drug screens; (2) obtain and maintain clean, safe, stable, and independent housing with working utilities; (3) and obtain employment or public assistance to demonstrate the ability to meet the children's basic needs.

{¶5} At the first review hearing, evidence showed that Mother was on a wait-list for housing, that she had been referred for mental health services, and that her visits with the children were going well. Father was employed but lacked housing. Because Father had tested positive for drugs, he was ordered to submit to a second substance abuse assessment. He failed to respond

to that requirement. Father had only visited with the children twice since their removal. The juvenile court maintained the children in the temporary custody of the agency.

{¶6} At the second review hearing, Father's attorney requested permission to withdraw based on his inability to have any contact with Father despite the attorney's repeated efforts. The trial court granted the request. The evidence at the hearing showed that Father was refusing to submit to drug screens or obtain the ordered substance abuse assessment. He had not attended any visits with the children for months. Mother's whereabouts were unknown and she had missed her last two scheduled visits with the children. The juvenile court maintained the children in the temporary custody of CSB.

{¶7} Two months later, Mother filed a motion for a six-month extension of temporary custody to allow her additional time to work on her case plan objectives. CSB filed a motion for permanent custody. The guardian ad litem notified the trial court regarding a conflict between his recommendation for permanent custody and T.B.'s desire to live with Mother and Father together. Another guardian ad litem was appointed to represent the best interest of the children, and the prior guardian ad litem assumed the role as the attorney for the children.

{¶8} The final dispositional hearing was heard over the course of two days on April 29, 2019, and August 1, 2019. The guardian ad litem did not attend the first day of the hearing due to illness and, therefore, did not hear the testimony of ten of the agency's witnesses. On the second day of the hearing, the CSB caseworker testified briefly and the guardian ad litem gave his report. At the conclusion of the hearing, the visiting judge directed the parties to file closing briefs and proposed findings of fact and conclusions of law. Only CSB complied and filed proposed findings of fact and conclusions of law. The juvenile court issued a judgment in which it wrote that it had had "the opportunity to fully consider the record including the pleadings, evidence and the GAL's

report * * *." The trial court then approved and adopted the agency's proposed findings of fact and conclusions of law "as its own in this case."[1] "Based upon same," the juvenile court granted CSB's motion for permanent custody and terminated Mother's and Father's parental rights. Mother and Father each filed notices of appeal. Mother raises two assignments of error for this Court's consideration, while Father raises three assignments of error. This Court consolidates some assignments of error where they implicate identical issues.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS WHEN IT GRANTED PERMANENT CUSTODY ON GROUNDS NOT ALLEGED IN CHILDREN SERVICES' MOTION FOR PERMANENT CUSTODY.

### FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR AND VIOLATED FATHER'S RIGHTS TO DUE PROCESS WHEN IT GRANTED PERMANENT CUSTODY ON GROUNDS NOT ALLEGED IN CHILDREN SERVICES' MOTION FOR PERMANENT CUSTODY.

{¶9} Mother and Father argue that the juvenile court committed reversible error by basing its award of permanent custody on grounds not alleged in CSB's motion for permanent custody. This Court disagrees.

---

[1] As the trial court is ultimately responsible for issuing an appropriate judgment entry, ordering the parties to independently submit findings of fact and conclusions of law from which the trial court will choose in rendering its judgment is not the preferred method. Because any proposed findings of fact and conclusions of law may be factually inaccurate and/or legally deficient, this Court cautions the trial court against merely adopting such proposals. Nevertheless, in this case, Mother and Father had the opportunity to submit their own findings of fact and conclusions of law for the juvenile court's consideration. The fact that they failed to do so did not prohibit the juvenile court's adoption of CSB's proposed findings of fact and conclusions of law as its own.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶11} It is well-settled that the five R.C. 2151.414(B)(1) first-prong factors are alternative findings, and CSB need only prove one of those grounds. *In re J.B.*, 9th Dist. Summit Nos. 28752 and 28753, 2018-Ohio-244, ¶ 9, citing *In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17, and *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 12. Where the juvenile court finds that the agency has proven by clear and convincing evidence one of the first-prong grounds alleged in its motion for permanent custody, the parents cannot establish prejudice based on any erroneous alternative first-prong findings by the juvenile court. *In re U.D.*, 9th Dist. Summit No. 29195, 2019-Ohio-512, ¶ 9. As long as clear and convincing evidence adduced at the hearing supports the juvenile court's finding regarding an alleged first-prong factor, an erroneous alternative finding is harmless error. *In re J.B.* at ¶ 9, citing *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 10.

{¶12} In this case, CSB alleged as its sole first-prong grounds that the children cannot or should not be returned to the parents within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). Although the juvenile court found that Mother and Father had abandoned the children, which would satisfy the grounds enunciated in R.C. 2151.414(B)(1)(b), it also found that CSB had proved its asserted allegations under R.C. 2151.414(B)(1)(a). As a thorough review of the record supports the juvenile court's finding that T.B. and A.B. cannot or should not be placed with either parent, the erroneous alternative first-prong finding was harmless. Mother's and Father's first assignments of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AS THE [JUDGMENT] WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Although Mother's and Father's second assignments of error purport to challenge the sufficiency and weight of the evidence underlying the award of permanent custody, both parents' arguments challenge the lack of citation to any alleged R.C. 2151.414(D) and (E) factors. Specifically, Mother and Father argue that the judgment must be reversed based on the juvenile court's "fail[ure] to list or find any of the 'E' factors under R.C. 2151.414(E), or any of the best interest findings under R.C. 2151.414(D)(1)[.]" This Court disagrees.

{¶14} A review of the findings of fact and conclusions of law adopted by the juvenile court indicates that those findings and conclusions were made, in part, pursuant to R.C. 2151.414. As R.C. 2151.414(B)(1) requires that the juvenile court base all findings and conclusions in support of permanent custody on clear and convincing evidence, this Court recognizes that the lower court did so pursuant to its stated compliance with the statute. Moreover, the express findings of fact address the substance of the statutory factors addressing the best interest of the children, as well as why the children cannot or should not be returned to their parents. Although the juvenile court did not include any citations to the relevant subsections of R.C. 2151.414(D) and (E) when enunciating its findings, Mother and Father cite no authority for such a requirement. This Court has never held that a juvenile court's first- and second-prong permanent custody findings must be accompanied by citation to the relevant subsections. Nor does the statute require as much. Because it is clear from the text of the judgment that the juvenile court made the necessary substantive findings of fact and conclusions of law, Mother's and Father's arguments are not well taken.

{¶15} Although Mother and Father make no substantive arguments challenging the weight of the evidence, this Court considers that issue in the interest of justice.

{¶16} When determining whether a permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations omitted.) *In re T.K.* at ¶ 7. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶17} In support of its first-prong allegation, CSB alleged in its motion for permanent custody that (1) despite reasonable case planning and diligent efforts by the agency, Mother and Father continuously and repeatedly failed to substantially remedy the conditions that caused the children's placements outside the home pursuant to R.C. 2151.414(E)(1); (2) Mother and Father demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children, when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children pursuant to R.C. 2151.414(E)(4); and (3) Mother and Father were unwilling for any reason to provide food, clothing, shelter, or other basic necessities for the children pursuant to R.C. 2151.414(E)(14).

{¶18} The clear and convincing evidence adduced at the permanent custody hearing supported the juvenile court's findings that CSB had proved by clear and convincing evidence the alleged first-prong grounds. CSB removed the children, who were adjudicated dependent, based on concerns regarding Mother's mental health, both parents' substance abuse issues, and Mother's and Father's lack of housing and inability to provide for the basic needs of the children.

{¶19} The agency made referrals for various assessments for the parents. Although Mother submitted to mental health and substance abuse assessments, she did not follow up with the recommended counseling. She was terminated for noncompliance with services at Summit Psychological Associates. She was later scheduled for an intake assessment at Coleman Behavioral, but she failed to appear for that. Mother never submitted to any requested drug screens, but she did allow the caseworker to swab her three times. In each case, Mother tested positive for amphetamines and methamphetamines. Once, she additionally tested positive for oxycodone.

{¶20} Father submitted to a drug and alcohol assessment, but he failed to disclose that he had overdosed on opiates seven months earlier. Because he was not forthcoming during his assessment, CSB modified the case plan to require that Father submit to a second assessment. Father failed to comply with that requirement. Although he too was required to submit to random drug screens, Father only submitted to two swabs by the caseworker. Both times, he tested positive for amphetamines and methamphetamines.

{¶21} Both parents remained transient throughout the case. Often, CSB was unable to locate either. Although Mother went to the Battered Women's Shelter upon CSB's referral, Mother was quickly asked to vacate the premises when drug paraphernalia was found in her quarters. Father sometimes stayed with acquaintances, but none of those homes were suitable for the children. On other occasions when Father's whereabouts were known, he was in jail on pending domestic violence or drug related charges.

{¶22} Although Mother was employed early in the case at a fast food restaurant, she did not maintain that, or any other, employment. Father claimed to work some jobs under the table, but he could not verify any stable employment.

{¶23} Mother and Father only visited sporadically with the children throughout the case. Because the parents had suffered a significant breakdown in their relationship, they were allotted separate visitation times. Mother last visited with the children four months prior to the second day of the permanent custody hearing. Father last visited with the children approximately nine months earlier.

{¶24} CSB established by clear and convincing evidence that, despite the agency's reasonable and diligent efforts, Mother and Father failed continuously and repeatedly to substantially remedy the conditions that caused the removal of T.B. and A.B. from the home. *See*

R.C. 2151.414(E)(1). Mother failed to address her mental health issues. Neither parent addressed their substance abuse, housing, and financial resources issues. Both Mother and Father also demonstrated a lack of commitment by failing to visit the children for significant periods of time during the case. *See* R.C. 2151.414(E)(4). Under these circumstances, the juvenile court's finding that the children could not be placed with Mother or Father within a reasonable time or should not be placed with either parent was not against the manifest weight of the evidence.

{¶25} The juvenile court was next required to find that an award of permanent custody was in the best interest of T.B. and A.B. When determining the best interest of children pursuant to R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the custodial history of the children, the interaction and interrelationships of the children, the children's wishes, the need for permanence in the children's lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶26} The children were removed from the parents' home when T.B. was four years old and A.B. was five months old. Since that time, they resided together in two foster homes. The current foster parents had placement of the children for approximately 16 months at the conclusion of the hearing. Because the foster parents are in their sixties, they are not willing to adopt the children. Nevertheless, they are willing to maintain the boys in their home until a suitable adoptive home is found.

{¶27} The children share a typical sibling bond. While T.B. finds A.B. to be a "pest" at times, A.B. is very attached to his older brother. The children's infant niece (a child of the boys' adult sister) also resides in the foster home. While T.B. is not very involved with the infant, A.B. adores her.

{¶28} T.B. expressed a desire to live with both Mother and Father. That would not be possible given the parents' strained and occasionally violent relationship, as well as the fact that they no longer reside together. T.B. is engaged in counseling to address some behavioral issues which manifest as a result of his diagnosed adjustment disorder. He would become very upset, cry, and act out for several days when Mother and Father failed to appear for scheduled visitations. After visits with Mother, T.B. would often use threatening and aggressive language towards A.B., mimicking comments Mother had made to the children.

{¶29} After two years in foster care, the children require permanence. Neither parent has remedied the conditions that precipitated the children's removal from the home. Mother and Father are, therefore, unable to provide a safe and stable home for T.B. and A.B. Moreover, by failing to visit with the children for many months prior to the hearing, both Mother and Father have abandoned the children pursuant to R.C. 2151.414(E)(10).[2] After a thorough investigation, the guardian ad litem opined it is in the children's best interest to be placed in the permanent custody of CSB.

{¶30} Based on a thorough review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice by terminating Mother's and Father's parental rights and granting CSB's motion for permanent custody. Mother and Father made negligible efforts to participate in various case plan services which were designed to help them remedy the conditions underlying the children's removal from the home. Both parents maintained limited and sporadic contact with the children, caseworker, and guardian ad litem. By the end of the case, neither parent had visited with the children for many months. Under these

---

[2] This Court emphasizes that the parents' abandonment of the children is relevant in this case only as to the best interest determination, because CSB failed to allege abandonment as a first-prong ground for permanent custody.

circumstances, the juvenile court's judgment awarding permanent custody to CSB was not against the manifest weight of the evidence. Mother's and Father's second assignments of error are overruled.

### FATHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR AND DENIED FATHER'S DUE PROCESS RIGHTS BY NOT CONTINUING THE PERMANENT CUSTODY HEARING SUA SPONTE WHEN IT KNEW FATHER WAS NOT PRESENT.

{¶31} Father argues that the juvenile court erred by failing to sua sponte continue the permanent custody hearing in Father's absence. This Court disagrees.

{¶32} Father failed to appear during both days of the permanent custody hearing on April 29, 2019, and August 1, 2019. In addition, Father was no longer represented by counsel by the time of the permanent custody hearing.[3]

{¶33} Father admits that no motion was made to continue the permanent custody hearing in his absence. Therefore, he has forfeited any argument regarding the lack of a continuance except for a claim of plain error. *See Herron v. Herron*, 9th Dist. Summit No. 29264, 2019-Ohio-5095, ¶ 5. Father argues plain error arose because holding the permanent custody hearing in his absence violated his right to due process.

{¶34} Parents have a fundamental right to raise their children. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Accordingly, any restriction of that fundamental right must comport with due process. *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16. It is well settled that due process requires notice and the opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13.

---

[3] Mother also failed to appear on either day of the hearing, although she was represented by counsel both days.

Nevertheless, due process remains "a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 22.

{¶35} Although permanent custody affects a fundamental right, parents have no absolute right to be present at the permanent custody hearing when the juvenile court considers whether to terminate their parental rights. *In re J.S.*, 9th Dist. Lorain No. 10CA009908, 2011-Ohio-985, ¶ 17. Moreover, "[p]arental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶36} After initially participating in the proceedings for the first two-and-a-half months, Father ceased appearing for hearings. Father's attorney requested and was permitted to withdraw at a review hearing on June 4, 2018, based on counsel's inability to contact Father despite counsel's efforts. The magistrate's order granting counsel's withdrawal was copied on Father individually. After that time, Father continued to have some contact with the caseworker, submitting to a drug swab in July 2018, and appearing for occasional visits until November 2018.

{¶37} In cases where a motion to continue a hearing has been made, the trial court should consider various factors, including: prior requests for and grants of continuances; the length of the requested delay; the inconvenience to all persons involved, including parties, witnesses, opposing counsel, and the court; whether the requested delay is legitimate or for some dilatory, purposeful, or contrived reason; whether the moving party contributed to the circumstances giving rise to the request; and any other factors relevant to the unique facts of the case. *State v. Unger*, 67 Ohio St.2d 65, 67-68 (1981). Judicial economy and the interest of the children in permanency would necessarily be relevant in custody proceedings. In this case, had the juvenile court considered

these factors, the record demonstrates that the juvenile court did not commit plain error by not sua sponte granting a continuance of the permanent custody hearing.

{¶38} After CSB filed its motion for permanent custody, the agency served Father by publication on November 5, 2018, because his address was not known at the time. The caseworker was later able to locate Father. Therefore, the agency effected personal service of the permanent custody motion on Father on January 23, 2019. Thereafter, the caseworker visited Father during his time in jail between February and March 2019. While Father did not appear for either day of the permanent custody hearing, the caseworker testified that he verified that Father was not in jail during those times. Accordingly, Father was free to appear and be heard.

{¶39} Father was properly served with notice of the permanent custody hearing and indicated an awareness of the circumstances based on his continued, albeit limited and sporadic, contact with the caseworker. The case had been pending for 19 months as of the first day of the hearing, and the children required timely permanence. Opposing counsel and witnesses were present and prepared to go forward. Although the guardian ad litem was absent due to illness, his attorney was present and asserted that he would have an audio recording of the first day's proceedings prepared for the guardian's review prior to the second day. Despite notice, Father had ceased attending court proceedings after the third month of the case. Given Father's transience and unknown whereabouts, it was not possible to determine the necessary length of any delay in the proceedings. Under these circumstances, this Court concludes that the juvenile court moreover did not err by failing to sua sponte continue the hearing in Father's absence. Father's third assignment of error is overruled.

III.

{¶40}  Mother's and Father's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BEN AYERS, Attorney at Law, for the children.

CHRISTINA BOLLMAN, Guardian ad Litem.