**[Cite as *In re A.B.*, 2022-Ohio-1633.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE A.B.
    X.B.

C.A. Nos.     22AP0002
                  22AP0003

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.    2020 JUV-C 000264
             2020 JUV-C 000265

DECISION AND JOURNAL ENTRY

Dated: May 16, 2022

TEODOSIO, Presiding Judge.

**{¶1}** Appellant Mother appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her two children in the permanent custody of Wayne County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of A.B., born February 28, 2014; and X.B., born March 1, 2020. After X.B. was born with opiates and marijuana in his system and experiencing withdrawal symptoms, CSB filed a complaint alleging that X.B. was a dependent and abused child. The agency also filed a complaint alleging that A.B. was a dependent child. CSB did not remove the children from the parents' home at that time. Instead, the parties agreed to an interim order of protective supervision by the agency.

{¶3} At the adjudicatory hearing, CSB withdrew its allegation of abuse. Mother and Father then stipulated to the remaining allegations in the complaints. The juvenile court adjudicated A.B. and X.B. dependent. The parties again stipulated at the dispositional hearing that the children would remain in the parents' home under CSB's protective supervision. The juvenile court adopted the agency's proposed case plan.

{¶4} Within four months, CSB filed an emergency motion to modify its order of protective supervision to emergency temporary custody based on new circumstances. Mother and Father tested positive for high levels of several illegal substances, including amphetamines, methamphetamine, opiates, and fentanyl. In addition, the guardian ad litem found a marijuana pipe in A.B.'s bedroom during a home visit. The parents were not sending A.B. to school, leading to a visit by a truancy officer. Troubling still was that the relative who had agreed to supervise all contact between the parents and the children had not been staying in the parents' home as agreed. The juvenile court issued an emergency order of temporary custody and the agency removed the children from the parents' home. At the shelter care hearing, Mother and Father stipulated to placing the children in the temporary custody of CSB.

{¶5} Mother and Father made minimal progress on their case plan objectives over the following several months, and CSB filed a motion for permanent custody. The agency withdrew its motion, however, when Mother and Father were accepted for participation in Family Dependency Treatment Court ("FDTC"), a specialized docket geared to helping parents address their substance abuse issues. The parties stipulated to a first six-month extension of temporary custody to allow Mother and Father to work toward reunification with the children.

{¶6} Despite their participation in FDTC, the parents continued to struggle with substance abuse issues. After Mother and Father tested positive for fentanyl use, the juvenile court,

on CSB's motion, suspended in-person visits to protect the children from exposure to that dangerous substance. The parents continued to have telephone and video visits with the children.

{¶7} After a few more months during which Mother and Father failed to attain or maintain sobriety, the juvenile court scheduled a hearing to determine whether to terminate their participation in FDTC. Mother and Father were ultimately discharged from FDTC based on their continued drug use and failure to attend treatment appointments. In the meantime, CSB filed a second motion for permanent custody.

{¶8} The case proceeded to an evidentiary hearing. After CSB presented its first witness, Father's attorney informed the juvenile court that Father wished to voluntarily surrender his parental rights regarding the children. Father submitted a signed parental stipulation to permanent custody to the court and verified that he understood the significance of his waiver of rights and the effect of his relinquishment. The juvenile court accepted Father's voluntary surrender, and Father left the courtroom. When the hearing resumed after a recess, Mother failed to return to the courtroom. Despite efforts to find or contact her, Mother was absent for the remainder of the hearing, although counsel remained in the courtroom to represent her interests.

{¶9} After the permanent custody hearing, the juvenile court issued a judgment terminating Mother's and Father's parental rights and placing A.B. and X.B. in the permanent custody of CSB. Mother filed a timely appeal. She raises one assignment of error for review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED [BY] GRANTING PERMANENT CUSTODY OF
THE MINOR CHILDREN [TO CSB].

{¶10} Mother argues that the juvenile court's judgment awarding permanent custody of A.B. and X.B. to CSB was against the manifest weight of the evidence. This Court disagrees.

**{¶11}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶12}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption*

*of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶13}** As for the first prong, CSB alleged that A.B. and X.B. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). Father voluntarily surrendered his parental rights. As to Mother, the juvenile court found that CSB had met its burden of proof based on one of the three subsection (E) grounds alleged. That subsection provides:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.

**{¶14}** This Court concludes that CSB proved by clear and convincing evidence that Mother failed continuously and repeatedly to substantially remedy the conditions that led to the children's removal. *See* R.C. 2151.414(E)(1). The agency removed the children from the parents' home based on Mother's and Father's substance abuse issues which put the children at risk for harm. Despite the agency's referrals for substance abuse treatment, Mother failed to take

advantage of services available to her. She only sporadically attended counseling sessions. When Mother submitted to drug screens, she consistently tested positive for amphetamines, methamphetamine, and fentanyl.

{¶15} When Mother was admitted to participate in FDTC, she had the opportunity to engage in a variety of services to help her achieve sobriety. She was required to (1) call in daily to see if she had to submit to a drug test; (2) meet weekly with her caseworker, peer recovery coach, and the FDTC coordinator; (3) attend a minimum of three sober support meetings per week; and (4) attend all recommended counseling and treatment sessions. The goal was to complete the orientation and three graduated phases required for successful compliance. Because Mother never tested negative for illegal substances, she never progressed beyond the orientation phase. After consistently testing positive for drugs, failing to attend required meetings and appointments, and refusing to engage in detoxification services, Mother was discharged from FDTC for non-compliance.

{¶16} CSB demonstrated that Mother continued to use illegal substances throughout the case. Despite the availability of multiple services and opportunities for Mother to engage in substance abuse treatment, she never attained a moment of sobriety. Instead, Mother continued to use a large quantity of a variety of drugs, including fentanyl which posed a significant risk to the children should they come into physical contact with it. Based on the clear and convincing evidence, Mother failed to remedy her substance abuse issues that led to the children's removal. Accordingly, the juvenile court's first-prong finding that A.B. and X.B. could not or should not be returned to Mother's care was not against the manifest weight of the evidence.

{¶17} CSB further established that permanent custody was in the best interest of the children. A.B. and X.B. were six years old and six months old, respectively, when the agency

removed them from their parents' care. CSB placed the children together in a foster home. The children have adjusted well to their environment and have developed a bond with the foster parents and their four children. X.B. is developmentally on target. A.B. struggled a bit in kindergarten, but he was able to catch up and was doing well in first grade at the time of the hearing. A.B. has been engaged in trauma counseling throughout the case to help him process his experiences in his parents' home, as well as his removal from that home.

{¶18} Early in the case, A.B. asked the caseworker for the juvenile judge's phone number so he could call and ask when he would be able to return home. Since that time, he has not expressed a consistent desire to live with his parents. A.B. does not understand the specifics of the case. He expressed his belief that Mother and Father cannot take care of him because they are "sick." The guardian ad litem reported that Mother and Father in fact told A.B. as much. The child is happy and comfortable in the foster home, although he told the caseworker and guardian ad litem that he would like to continue to visit with Mother and Father. The guardian ad litem opined that A.B. does not grasp the significance of the situation and is not mature enough to express his wishes for custody. X.B., at 19 months old, was too young to express any desire regarding custody. The guardian ad litem recommended that an award of permanent custody was in the children's best interest.

{¶19} The children require permanence, i.e., a safe and stable home without risk of further disruption. Father voluntarily surrendered his parental rights and is not an option for permanency. Mother cannot reasonably provide a safe and stable home for the children at this time or in the foreseeable future. Mother has demonstrated no ability to refrain from using the illegal substances which she has prioritized throughout the case. She declined opportunities for residential and detoxification treatment. She failed to take advantage of intensive outpatient treatment and the

sundry services offered via FDTC. She put the children at risk for exposure to fentanyl by using that substance while she still had the opportunity for in-person visits. By failing to utilize the sobriety services available to her, Mother did not develop the insight or skills to allow her to provide a safe and stable home for the children. Under the circumstances, CSB established by clear and convincing evidence that an award of permanent custody was in the best interest of the children. Accordingly, the juvenile court's judgment that terminated the parents' parental rights and placed A.B. and X.B. in the permanent custody of CSB was not against the manifest weight of the evidence.

{¶20} To the extent that Mother argues that the juvenile court erred by not extending temporary custody for an additional six months, the argument is not well taken. This Court consistently holds that when an award of permanent custody is in the best interest of the children, then an extension of temporary custody necessarily is not. *See In re L.T.*, 9th Dist. Summit No. 29972, 2022-Ohio-114, ¶ 33. Moreover, to justify a second six-month extension of temporary custody, there must be clear and convincing evidence that the additional extension is in the best interest of the children, that the parent has made substantial additional progress toward reunification since the first extension, and that there is reasonable cause to believe that reunification will occur within the extension period. R.C. 2151.415(D)(2). In addition to a lack of evidence that any further extension was in the children's best interest, Mother failed to make substantial progress in addressing her substance abuse case plan objective. Based on Mother's lack of progress and the severity of her substance abuse issues, there was no reasonable cause to believe that the children could be reunified with her within the period of extension. *See* R.C. 2151.415(D)(2). Mother's assignment of error is overruled.

III.

**{¶21}** Mother's sole assignment of error is overruled.  The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.