[Cite as *In re P.W.*, 2023-Ohio-4830.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: P.W.

C.A. No.  30761

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.  DN 21 11 0907

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

HENSAL, Judge.

{¶1}    Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency").  This Court affirms.

I.

{¶2}    Mother is the biological mother of P.W., born March 18, 2010.  The child's father lives outside of Ohio, had limited involvement in the case below, and has not appealed.

{¶3}    Mother was incarcerated in 2013, when P.W. was three years old.  A non-relative began caring for the child at that time. In 2015, the non-relative caregiver obtained a guardianship over the child to allow her to authorize medical care and enroll him in school.  When Mother was released from prison in 2021, the guardian moved the probate court to terminate the guardianship because she was having difficulty managing the child's behavioral issues.  The probate court terminated the guardianship on June 3, 2021, and P.W. returned to Mother's physical and legal

custody. As Mother was transient and lacked stable housing, she sent the child to stay with his maternal aunt and uncle ("Aunt" and "Uncle").

{¶4} After P.W. had been living with Aunt and Uncle for a few weeks, the police were called to that home to address a domestic dispute between Aunt and Uncle. Because there was also methamphetamine in that home, the police contacted CSB regarding the child. The agency asked Mother to retrieve the child. She did so and brought P.W. to the maternal grandmother's ("Grandmother") home where Mother was also staying. CSB apparently checked in on the child and learned that Mother had been using methamphetamine and had been involved in a physical altercation with P.W. The agency implemented a safety plan whereby the child would stay with Grandmother while Mother sought housing elsewhere. When Grandmother could no longer maintain the child in her home, CSB transitioned P.W. into the home of a non-blood kinship provider and filed a complaint alleging him to be a neglected and dependent child.

{¶5} Mother waived her right to an adjudicatory hearing and stipulated to findings that the child was neglected and dependent. After a dispositional hearing, the juvenile court placed P.W. in the temporary custody of CSB and adopted the agency's case plan as an order. Mother was ordered to obtain mental health and substance abuse assessments, follow all recommendations, submit to drug screens, develop healthy social networks, and obtain and maintain a source of income and independent housing to provide for the child's basic needs. The case plan also required mental health services for the child.

{¶6} Six months into the case, CSB removed P.W. from the kinship home when the provider could not manage the child's behaviors. The agency placed P.W. in a foster home that the foster father shared with another male foster child close to P.W.'s age. P.W. remained in the

agency's temporary custody throughout two review hearings. Mother was participating in case plan services but still continuing to test positive for methamphetamine use.

{¶7} CSB filed a motion for permanent custody, alleging that the child could not or should not be returned to either parent and that permanent custody was in his best interest. Mother moved for a six-month extension of temporary custody. Mother did not appear for the permanent custody hearing, although her attorney was present and represented her interests. After the hearing, the juvenile court issued a judgment granting permanent custody to CSB and terminating the parents' parental rights. Mother timely appealed and raises two assignments of error for review.[1] We consolidate her assignments of error for ease of discussion.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF [CSB]. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN DENYING MOTHER'S MOTION FOR SIX-MONTH EXTENSION OF TEMPORARY CUSTODY.

{¶8} Mother argues that the juvenile court's permanent custody judgment is against the manifest weight of the evidence and that it erred by not granting a six-month extension of temporary custody. This Court disagrees.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

---

[1] The juvenile court stayed the judgment pending appeal.

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶11} As to the first prong, CSB alleged that P.W. could not or should not be returned to either parent pursuant to Section 2151.414(B)(1)(a). The juvenile court found that the agency had

met its burden of proof based on two of the various subsection (E) grounds alleged.  Those subsections provide:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code[.]

Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one.  *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.

{¶12}  This Court concludes that CSB proved by clear and convincing evidence that Mother failed continuously and repeatedly to substantially remedy the conditions that led to the child's removal.[2]  *See* R.C. 2151.414(E)(1).  The agency allowed the child to remain with

---

[2] As Father has not appealed, this Court confines our discussion to Mother's efforts to remedy concerns.

Grandmother under a safety plan as long as Mother vacated Grandmother's home. CSB took custody of P.W. when Grandmother could no longer provide care for him, as the agency had concerns regarding Mother's mental health, drug use, and lack of stable housing and income. As Mother had not been the child's caregiver since he was three years old, she was required to demonstrate that she could provide a safe, stable, and appropriate home for him.

{¶13} The caseworker testified that Mother has a long history of methamphetamine use and was involved in services at Brightview before the agency became involved. Mother has been forthright regarding her addiction. She participates in individual counseling and medically assisted treatment, although she has not followed through on the recommendation for group counseling. After being referred for inpatient treatment, Mother was admitted eight months later. She was medically discharged within two weeks because she experienced seizures. Despite Mother's consistent efforts to participate in substance abuse treatment, she tested positive for methamphetamine use on every drug screen received by the agency. The caseworker testified that Mother was not compliant with her substance use case plan objective because she had made no progress toward achieving sobriety.

{¶14} Mother also participated in mental health counseling and took medications to address her diagnoses of anxiety, depression, and posttraumatic stress disorder. Shortly before the permanent custody hearing, she texted the caseworker to inform her that she was experiencing significant anxiety and depression and that she would be seeking inpatient treatment at a local hospital. Mother did not follow through with inpatient treatment. Neither could she articulate the mental health safety plan she said she had developed with her counselor. As recently as a few days before the hearing, Mother refused to speak with the caseworker because she felt

incapacitated by her anxiety and depression. Accordingly, the caseworker testified that Mother had not made any progress on her mental health objective.

{¶15} As to basic needs, Mother had no source of income during the case. She reported a few side jobs but never provided any verification to the caseworker. Mother remained homeless throughout the case, as well. She alternated between hotels, friends' homes, and her boyfriend's home. Mother informed the caseworker that her boyfriend was controlling, abusive, did not support her efforts to become sober, and did not want P.W. to live in his home. Without financial means to support the child and a safe and stable home, Mother had not remedied the concerns regarding her ability to provide for the child's basic needs.

{¶16} Based on this Court's review, CSB established by clear and convincing evidence that Mother had failed to remedy the concerns that led to the child's removal from home. Mother failed to demonstrate a sustained period of sobriety. She continued to struggle with debilitating mental health issues. She had no appropriate housing where the child might reside. She lacked the financial resources to provide for P.W.'s basic needs. Accordingly, the juvenile court's first-prong finding that the child could not or should not be returned to the parents' care is not against the manifest weight of the evidence.

{¶17} The agency further demonstrated that permanent custody is in the best interest of the child. The 13-year-old child spent only the first three years of his life with Mother. He was under the guardianship of a non-relative while Mother was in prison for over seven years. After Mother's release from prison, P.W. spent only a couple of weeks with Mother before she placed him with Aunt and Uncle. Thereafter, he was removed and placed in the temporary custody of CSB.

{¶18} P.W. has consistently refused to have contact with Father. Despite Mother's inconsistency in visiting the child, the two have developed a good relationship. P.W. enjoys his contacts with Mother, although those occur mainly through daily phone calls. Mother had not seen the child in person for about four months at the time of the hearing. She provided various reasons to the caseworker for her failure to visit, including that she was sick, had car trouble, and that she had no time for in-person visits.

{¶19} The child's placement with two non-relatives disrupted due to his behavioral issues. P.W.'s behavior has improved greatly since being placed in a foster home with a male caregiver. The child has developed a close bond with his foster father and is very comfortable in that home. The foster father is leaning towards adopting P.W., although he remains undecided. Even if he ultimately decides not to pursue adoption of the child, he is willing to provide him with a home until another permanent home can be found. Mother and the foster father have a good relationship, and the foster father supports the child's relationship with Mother.

{¶20} After many years of instability, P.W. requires permanency. The foster father has indicated a willingness to provide that for the child, either through adoption or long-term placement. P.W. wishes to remain with the foster father. Mother trusts the foster father, is happy with the child's placement there, and has told the caseworker that adoption by the foster father would be a good option for P.W. The guardian ad litem opined that permanent custody would meet the best interest of the child, particularly given the child's wishes and acclimation to the foster home, as well as the good relationship that the foster father maintains with Mother.

{¶21} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of P.W. to CSB. Despite participation

in case plan services, Mother continues to struggle with substance abuse and mental health issues which impact her ability to provide care for the child. In addition, Mother has no financial means or stable housing and remains unable to meet the child's basic needs. On the other hand, P.W. is thriving in the foster home where he wishes to remain. Mother has recognized this as a good option for the child. The foster father is open to adopting P.W., or at a minimum, maintaining the child in his home until an appropriate permanent home becomes available. An order of permanent custody to the agency does not guarantee that P.W. will remain in the home with the foster father. Nevertheless, in light of all of the circumstances here, CSB established by clear and convincing evidence that an award of permanent custody is in the child's best interest. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights and placing P.W. in the permanent custody of the agency is not against the manifest weight of the evidence.

{¶22} This Court rejects Mother's argument that the juvenile court erred by denying her motion for a six-month extension of temporary custody. We have consistently held that, when an award of permanent custody is in the best interest of the child, then an extension of temporary custody necessarily is not. *See In re L.T.*, 9th Dist. Summit No. 29972, 2022-Ohio-114, ¶ 33. Moreover, to justify a six-month extension of temporary custody, there must be clear and convincing evidence that the extension is in the best interest of the child, that the parent has made substantial progress toward reunification through case plan compliance, and that there is reasonable cause to believe that reunification will occur within the extension period. R.C. 2151.415(D). In addition to a lack of evidence indicating that an extension was in the best interest of the child, Mother had not made substantial progress on her case plan objectives, and there was no reasonable cause to believe that the child could be reunified with her within the period of the extension. *See* R.C. 2151.415(D).

**{¶23}** Based on the above discussion, this Court concludes that the juvenile court did not err by granting CSB's motion for permanent custody and terminating the parents' parental rights. Mother's first and second assignments of error are overruled.

### III.

**{¶24}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

SHUBHRA AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.

SALLY PRENTICE, Attorney at Law, for Appellee.

JAMES BRIGHTBILL, Guardian ad Litem.