[Cite as *In re N.G.*, 2023-Ohio-4767.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: N.G.

C.A. Nos.    30808
               30811

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 21 12 1017

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

---

FLAGG LANZINGER, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of N.G., born August 19, 2021. She is also the biological mother of I.C., born October 1, 2020, who is not a subject-child in this appeal but whose circumstances are relevant to N.G. The child's paternity has been established but Father was minimally involved below and has not appealed.

**{¶3}** On December 22, 2021, Mother, her then-boyfriend, and one-year-old I.C. were together on an enclosed porch in Mother's home, while N.G. was sleeping in another room. As Mother's boyfriend was removing the magazine from a handgun, the weapon accidentally discharged, injuring the boyfriend. It was not until the next day, when Mother was changing I.C.'s

clothes, that she claimed to have noticed that I.C. had also been shot. Instead of taking I.C. to the hospital for treatment, Mother merely washed the entrance and exit wounds. On December 24, 2021, Mother finally took I.C. to an emergency room for medical treatment. The child had suffered a "through and through" gunshot wound close to her lung. Hospital staff contacted CSB and a caseworker took both I.C. and N.G., who was also present at the hospital, into custody.

{¶4} CSB filed a complaint in which it alleged that the children were abused and dependent. The concerns underlying the complaint included allegations that Mother endangered the children by allowing them in close proximity to someone with a loaded firearm and by failing to seek medical care for I.C. in a timely manner, that Mother had admitted to recently using marijuana, and that Mother admitted she had certain mental health diagnoses and appeared to be experiencing symptoms of mental health issues. Specifically, Mother had threatened to kill herself if the agency removed the children from her care. The police had charged Mother with child endangering and she also had a domestic violence/menacing case pending. At the shelter care hearing, Mother waived her right to a hearing and stipulated to probable cause for the removal of the children.

{¶5} After an adjudicatory hearing, the juvenile court found N.G. to be abused (endangered) and dependent. The court specifically found that Mother put her own interests before those of the children by delaying treatment for I.C. It found that N.G. was endangered because she might easily have been shot instead of or in addition to I.C. The court found dependency based on the child's circumstances, including her proximity to a negligently handled loaded firearm and Mother's unreasonable delay in seeking medical care for one of her young children.

{¶6} Mother waived her right to a dispositional hearing and agreed to the children's placement in the temporary custody of CSB and the juvenile court's adoption of the agency's case

plan as an order. In furtherance of the goal of reunification, CSB created case plan objectives to address the concerns underlying the children's removal and additional issues identified in the meantime. Mother was required to (1) engage in intensive parenting education and demonstrate her understanding through healthy interactions with the children; (2) obtain safe and appropriate housing and a verifiable source of income adequate to meet the children's basic needs; (3) address her pending criminal charges; (4) obtain both mental health and chemical dependency assessments, follow all recommendations, and submit to random drug screens; (5) meet with a medical provider to obtain consistent treatment for diabetes and other physical health issues; and (6) sign releases of information for the agency to obtain information from service providers.[1]

**{¶7}** After the first review hearing, the magistrate found that Mother had not begun engaging in case plan services, had changed housing and jobs multiple times, and was removed from the visitation schedule after frequently missing visits. Mother did not attend the second review hearing and had ceased contact with the caseworker and child by that time. She had lost some housing and economic benefits due to lack of compliance with a service provider's rules. While Mother had obtained at least one assessment, she had not followed through with any recommended treatment. N.G. remained in the agency's temporary custody during this time.

**{¶8}** Ten months into the case, CSB moved for permanent custody of N.G.[2] For its first-prong grounds, the agency alleged that the child could not or should not be returned to either parent based on various R.C. 2151.414(E) factors and that Father had abandoned the child. It further alleged that an award of permanent custody was in the best interest of the child. Mother filed a

---

[1] CSB developed objectives for the two fathers of the children but neither man engaged in services during the cases.

[2] CSB moved for legal custody of I.C. to that child's paternal grandmother. The juvenile court granted that motion.

motion for legal custody, or alternatively, a six-month extension of temporary custody. The juvenile court scheduled a hearing on those motions to occur 18 months after the agency had filed its complaint. Shortly before the permanent custody hearing, CSB moved to suspend further visitation by Mother based on the extreme and adverse reactions of the child during and after those visits. The trial court suspended Mother's visitation on an interim basis.

{¶9} The juvenile court held the permanent custody hearing and later issued a judgment granting the agency's motion and terminating the parents' parental rights to N.G. It denied all other pending dispositional motions. The juvenile court further expressly granted CSB's motion to suspend Mother's visitation and ordered that neither parent could have a farewell visit with the child. Mother timely appealed and raises two assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR TO MOTHER'S DETRIMENT IN FINDING THAT THE CHILD COULD NOT BE RETURNED BECAUSE THIS FINDING WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother argues that the juvenile court erred by granting CSB's motion for permanent custody because its first-prong finding that the child could not be returned to Mother is against the manifest weight of the evidence. This Court disagrees.

{¶11} As an initial matter, to the extent that Mother raises issues regarding the adjudication of the child as abused and dependent, we decline to address those as untimely. If Mother wished to challenge those findings, she was required to appeal within 30 days of the judgment placing N.G. in the agency's temporary custody after the adjudication. *See In re K.K.*, 170 Ohio St.3d 149, 2022-Ohio-3888, ¶ 58.

**{¶12}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶13}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶14}** Mother challenges only the juvenile court's first-prong finding that N.G. could not or should not be returned to Mother's custody. She does not argue that an award of permanent custody was not in the best interest of the child.

{¶15} As to the first prong, CSB alleged that N.G. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). The juvenile court found that the agency met its burden of proof based on one of the multiple subsection (E) grounds alleged. That subsection provides as follows:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.

{¶16} Mother argues that she was only obligated to remedy two concerns, specifically, "the proximity of the child to a gun and the failure of the mother to provide timely medical attention to the child's wounded sibling." She asserts that the evidence adduced at the permanent custody hearing demonstrated that, throughout the case, she never owned a gun or withheld medical care from N.G. Accordingly, Mother argues that there is no clear and convincing evidence of her failure to remedy the conditions underlying the child's removal from Mother's home.

{¶17}  Mother too narrowly construes the agency's concerns regarding her ability to provide a safe and stable environment for the child.  She waived her right to an initial dispositional hearing and agreed to the juvenile court's adoption of the agency's case plan.  The magistrate's decision issued after the initial dispositional hearing and adopting the case plan states that the case plan "is adequately tailored to address the concerns which led to removal[.]"  Mother never filed objections to the magistrate's decision or the case plan.  Her objectives included more than merely removing the loaded firearm from her home and refraining from withholding medical care from N.G.

{¶18}  While the specific incidents that gave rise to the agency's involvement concerned Mother's boyfriend shooting I.C. and Mother's failure to seek immediate medical care for that child, those implicated broader concerns related to Mother's ability to provide an appropriate home for her children in general.  The case plan required Mother's participation in various services designed to help her overcome the issues that interfered with her ability to prioritize her children's needs.  Those services included parenting education, substance abuse and mental health treatment, and taking care of her own medical conditions and basic needs so that she would be in an appropriate physical, mental, and emotional state to provide adequate care for the children.

{¶19}  Mother obtained mental health and substance abuse assessments from Ohio Guidestone but she failed to participate in the recommended treatment services with any consistency.  Ohio Guidestone terminated her services based on her repeated failures to engage.  Mother was also terminated from the Bridges program on two occasions for noncompliance with their requirements.  Bridges provided rent payments, a supplemental stipend, and tuition assistance.  Although Mother had reengaged with Bridges shortly before the hearing and obtained

housing, she was homeless, moving back and forth between friends' homes, shelters, and hospitals throughout much of the case.

{¶20} Mother submitted to most required drug screens, testing positive for marijuana on some occasions and negative on others. Mother initially told the caseworker that she used marijuana daily. Her last positive screen occurred six months prior to the hearing. Two subsequent tests did not provide any results because of some deficiency in the testing process.

{¶21} Mother is a diabetic who routinely neglected her own medical issues. She let her medical insurance lapse and was unable to fill her prescription for insulin. She spent time in the hospital related to complications from her diabetes during the case. She would be unable to provide care for her child whenever she experienced medical emergencies related to her untreated diabetes.

{¶22} Although Mother completed a series of parenting classes, she attended them sporadically over six months instead of within the time frame of a specific course. The caseworker and guardian ad litem testified that Mother did not demonstrate the ability to implement any lessons she might have learned. The biggest concern was Mother's failure to visit consistently with N.G. Mother attended only 16 of her 65 scheduled visits, going as many as 125 days at a time without seeing the child. The guardian ad litem reported that she was not persuaded by Mother's excuses for missing visits. For example, while Mother often asserted that she had missed the bus or the bus was running late, Mother testified that she used Uber and Lyft services on a regular basis to go everywhere she needed to go. She did not explain why she did not use car services to go to visits.

{¶23} Because Mother failed to appear at most of her visits, the caseworker and guardian ad litem had limited opportunities to observe her interactions with N.G. On the few occasions

Mother visited with the child, she frequently looked to others like the visitation supervisor, guardian ad litem, caseworker, and foster parents for assistance and guidance. When she could not calm the child, Mother gave N.G. her phone and allowed the child to spend the two-hour visit watching videos.

{¶24} Based on a thorough review of the evidence, this Court concludes that this is not the exceptional case where the trier of fact clearly lost its way and committed a manifest miscarriage of justice by finding that N.G. could not return to Mother's custody due to Mother's failure to remedy the concerns underlying the child's removal from home. Mother's case plan objectives were designed to help her develop skills necessary to refocus her priority on her children and provide a safe and stable environment in which their needs would be met. The caseworker testified that Mother failed to comply in a meaningful way or utilize the various services available to her. Mother did not engage in mental health or substance abuse treatment. She did not take advantage of her opportunity to visit with N.G. weekly. She failed to demonstrate the ability to independently meet the child's needs. CSB presented clear and convincing evidence that Mother was in no better position to protect N.G. and meet her basic needs than she was when the agency filed its complaint. Accordingly, the juvenile court's first-prong finding is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION, COMMITTED REVERSIBLE ERROR AS WELL AS PLAIN ERROR TO MOTHER'S DETRIMENT WHEN IT FAILED TO CONSIDER A SIX MONTH EXTENSION IN DISREGARD OF THE STATUTE.

{¶25} Mother argues that the juvenile court misinterpreted and misapplied R.C. 2151.415(D) when it concluded that only CSB had statutory authority to move for a six-month

extension of temporary custody. Mother, therefore, argues that the juvenile court deprived her of due process to be heard regarding her motion for an extension. This Court disagrees.

{¶26} R.C. 2151.415(D) allows the juvenile court to order a six-month extension of temporary custody upon the agency's request if clear and convincing evidence demonstrates that the extension is in the best interest of the child, the parent has made significant progress or substantial additional progress on the case plan, and there is reasonable cause to believe that reunification will occur within the period of the extension. The juvenile court's judgment, issued by a visiting judge, in fact states that "[o]nly a public children services agency or a private child placing agency can file a motion for an extension of temporary custody under R.C. 2151.415(A)(6)[,]" which relates back to section (D).

{¶27} Any error by the visiting judge relating to the interpretation of the statute in this case, if such exists, is harmless. Although the juvenile court stated that Mother was not authorized to move for an extension of temporary custody, the court nevertheless addressed her motion on the merits in consideration of all the evidence presented during the hearing. Applying the statutory factors to the evidence, the trial court found that Mother failed to meet her burden of proving that an extension was in the child's best interest, that she had made significant progress on her case plan objectives, or that there was reasonable cause to believe that N.G. could be reunified with Mother within the next six months. Mother has not challenged those factual findings. Because the juvenile court addressed the substantive merits of Mother's motion for an extension, it did not deprive her of due process or otherwise affect her substantial rights, rendering any error harmless. *See* Civ.R. 61. Mother's second assignment of error is overruled.

III.

**{¶28}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

NEIL P. AGARWAL, Attorney at Law, for Appellee.

HOLLY FARAH, Guardian ad Litem.